**UNITED STATES of America,**

**v.**

**Thomas DI SALVO, Defendant.**

United States District Court
S. D. New York.
March 4, 1966.

742

Robert M. Morgenthau, U. S. Atty., by Andrew J. Maloney, Asst. U. S. Atty., for the United States.

James Dempsey, White Plains, N. Y., for defendant.

EDELSTEIN, District Judge.

The defendant, charged in a one-count indictment[1] with violating 29 U.S.C. § 186(b) and (a) (2), moves to dismiss the indictment, or, in the alternative, for an order permitting him to inspect a transcript of the testimony given before the Grand Jury and for an order directing the government to provide a bill of particulars.

■ Defendant's memorandum of law asserts ten separate arguments in support of his motion to dismiss the indictment. He first asserts that although 29 U.S.C. § 186(a) (2) proscribes payments by an employer to a labor organization or "employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce;" (italics added), the indictment charges that the defendant was an employee of a labor organization "which represents, seeks to represent, and would admit to membership employees who are employed in industry affecting commerce." (Italics added.) Defendant urges that by changing the italicized word "or" to "and" the indictment applies only if the union (of which the defendant is an employee) actually represents employees of the relevant employer. Defendant's local, 32-E, it is argued, does not in fact represent any of the relevant employees and therefore the indictment has no application to him.

The significance of this argument is to raise the question of what the government may prove in order to show a violation of the statute and perhaps whether such proof, in its disjunctive, would constitute a permissible variance from the indictment. This need not be resolved now. Any failure of proof or improper variance may be raised at trial when appropriate. See Arellanes v. United States, 302 F.2d 603, 609 (9th Cir.), cert. denied, 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962) and cases cited therein.

■ Defendant's second argument in support of his motion to dismiss the indictment is based on a similar departure in the indictment from the statutory language. Title 29 U.S.C. § 186(b)

---

1. The indictment reads as follows:

"The Grand Jury charges:

"On or about the 20th day of May, 1960, in the Southern District of New York, THOMAS DI SALVO, the defendant, an employee of a labor organization to wit, a Representative, Local 32–E, Building Service Employees International Union, which represents, seeks to represent, and would admit to membership employees who were employed in an industry affecting commerce, did unlawfully, wilfully and knowingly request, demand, and receive and accept, and agree to receive and accept from Wolfe Duberstein an employer of the aforesaid employee, [sic] a thing of value, to wit, a loan in the amount of $5,000.

"Title 29, United States Code, Section 186 [(b) and (a) (2)]"

The papers submitted by the parties and the Grand Jury minutes indicate that the phrase "of the aforesaid employee" was intended to mean and has been understood to mean "of the aforesaid employees," thereby referring back to "employees who were employed in an industry affecting commerce. * * *" The use of the singular rather than the plural was apparently inadvertent. Defense counsel, who has attacked the indictment on numerous grounds, has not objected to it on this ground and his papers show beyond any doubt that the defense has not been misled.

declares it unlawful "for any person to request, demand, receive, *or* accept, *or* agree to receive *or* accept \* \* \*" (italics added) any proscribed payment. The indictment, however, charges that the defendant did "request, demand, *and* receive *and* accept, *and* agreed to receive and accept" a proscribed payment. (Italics added). Defendant, in effect, urges that the statute creates at least two separate offenses making it unlawful either to request, demand, receive or accept a proscribed payment and also making it unlawful to agree to receive or accept such a payment. Defendant also urges that the statute should be read as creating a separate offense of requesting or demanding such a proscribed payment. Assuming *arguendo* that defendant's reading of the statute is correct, see Burton v. United States, 202 U.S. 344, 377–378, 26 S.Ct. 688, 50 L.Ed. 1057 (1906), and therefore the three offenses charged might properly be the subject of three separate counts, this court does not agree that the indictment must therefore be dismissed as duplicitous. Having been charged with only one count of violating the statutory prohibition, the defendant, if found guilty, may be sentenced only once. If, on the other hand, the defendant is found innocent, then, for purposes of double jeopardy, he will have have been acquitted of all three offenses. Crain v. United States, 162 U.S. 625, 636, 16 S.Ct. 952, 40 L.Ed. 1097 (1896); Turf Center, Inc. v. United States, 325 F.2d 793, 797 (9th Cir. 1963). There is, therefore, no possible prejudice to the defendant by including within the one-count indictment three separate offenses. See United States v. Ricciardi, 64 Crim. 863, S.D.N.Y. Jan. 6, 1965. The further contention raised in defendant's supplemental memoranda that an indictment phrased in the conjunctive is inherently ambiguous, has no merit. See United States v. Ricciardi, 2d Cir., Feb. 4, 1966, 357 F.2d 91, at 99; Turf Center, Inc. v. United States, supra, 325 F. 2d at 796–797; Arellanes v. United States, supra, 302 F.2d at 609.

The defendant's third argument is that the indictment should be dismissed because he was improperly subpoenaed before the Grand Jury, not warned that he was a prospective defendant, and, in effect, compelled to bear witness against himself. The Grand Jury transcript, which was not available to counsel making this motion, shows, however, that the defendant was informed of the nature of the Grand Jury investigation and advised that he was not required to make any statement before the Grand Jury but that any statement he did make could be used against him. He was also informed that he had a right to counsel and that the Grand Jury might indict him. It is clear from the transcript that the defendant's statements were made voluntarily with an awareness of both his constitutional rights and the possible consequence of his statements. Accordingly, defendant's appearance and statements before the Grand Jury afford no basis for dismissing this indictment. See United States v. Winter, 348 F.2d 204 (2d Cir.), cert. denied, 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed.2d 360 (1965); United States v. Cleary, 265 F.2d 459 (2d Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed. 2d 1548 (1959).

Defendant's fourth argument is that the indictment is deficient because it fails to allege what industry affecting commerce is involved or facts showing how the industry affected commerce. The Second Circuit has recently rejected that argument when it upheld a similarly worded indictment in United States v. Ricciardi, supra, 357 F.2d at 91.

The defendant's fifth argument made on information and belief is that no evidence was presented to the Grand Jury from which it could infer that employees of the alleged lender were engaged in an industry affecting commerce. It is not necessary, however, for a court to look behind the face of an otherwise valid indictment in order to determine whether adequate or competent evidence was introduced before the Grand Jury. Lawn v. United States, 355 U.S. 339, 78

S.Ct. 311, 2 L.Ed.2d 321 (1958); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); see United States v. Tane, 329 F.2d 848, 853–854 (2d Cir. 1964).

The defendant's sixth argument will be dealt with in conjunction with his ninth and tenth arguments, infra.

The defendant's seventh argument, that the court lacks jurisdiction over the subject matter of this indictment because the nature of the industry affecting commerce is not stated within the indictment, is without merit. In dealing with defendant's fourth argument, supra, this court has found the indictment sufficient even though it does not specify the nature of the industry affecting commerce. The indictment charges an offense against the laws of the United States and therefore this court clearly has subject matter jurisdiction at this stage of the proceedings.

The defendant's eighth argument is that the Grand Jury which returned the instant indictment was not properly selected in that its members were not drawn from a pool of those constituting a representative cross-section of the community. The defendant here expressly relies on the arguments and testimony adduced in United States v. Van Allen, 208 F.Supp. 331 (S.D.N.Y.1962), aff'd sub nom., United States v. Kelly, 349 F.2d 720 (2d Cir. 1965). Defendant's Memorandum in Support of Motion to Dismiss Indictment at 25. On the day immediately preceding the filing of defendant's brief in this case, however, the Second Circuit affirmed the conviction referred to in the Van Allen case expressly rejecting the arguments related to the Grand and Petit Jury selection procedures in this district. United States v. Kelly, supra at 777–79. See, e. g., United States v. Agueci, 310 F.2d 817, 833–834, 99 A.L.R.2d 478 (2d Cir. 1962), cert. denied, 372 U.S. 959, 83 S.

Ct. 1016, 10 L.Ed.2d 12 (1963); United States v. Kenner, 36 F.R.D. 391, 392–93 (S.D.N.Y.1965); United States v. Greenberg, 200 F.Supp. 382 (S.D.N.Y. 1961).

The defendant in his sixth, ninth and tenth arguments urges that the indictment should be dismissed because the statute allegedly violated is unconstitutional. It is contended, in effect, that there is no rational connection between the congressional purpose of industrial peace and the conduct proscribed. Therefore, defendant reasons, the enactment is beyond the scope of the congressional power under the commerce clause. Defendant further contends that the statute lacks constitutionally required definiteness to assure him due process and the right to be informed of the charges against him. Finally defendant contends that the scope of proscribed conduct is so broad that it makes criminal a wide range of ordinary commercial transactions, such as bank mortgages and loans on insurance policies, when engaged in by any of the statute's enumerated classes of persons. Defendant urges that this sweeping prohibition is not only outside of the scope of the commerce clause but also deprives broad classes of persons of property rights without compensation and without due process of law. Defendant's first two contentions have been effectively dealt with by the Second Circuit in United States v. Ryan, 232 F.2d 481 (2d Cir. 1956) and by Judge Palmieri in the Ryan case's findings of fact and conclusions of law. See United States v. Ryan, 128 F.Supp. 128, 134–136 (S.D.N.Y.1955), rev'd, 225 F.2d 417 (2d Cir. 1955), aff'd., 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956). The statute was amended subsequent to the Ryan cases to expressly include loans [2] as a proscribed type of transaction. It was also amended to include employees of a labor organization which would "admit

2. Whether the earlier statute, under which the Ryan cases were decided, proscribed "loans" was a question upon which the circuits were divided. Compare United States v. Roth, 333 F.2d 450 (2d Cir. 1964), with United States v. Carter, 311 F.2d 934, 939–940 (6th Cir. 1963).

to membership" employees of the relevant employer. Although these changes broadened the scope of the statute, they did not render it vague. See United States v. Petrillo, 332 U.S. 1, 3–8, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); Robinson v. United States, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945); cf. United States v. Irwin, 354 F.2d 192 (2d Cir. 1965). The statute presently in force retains the requirement that the employees of the relevant employer be "employed in an industry affecting commerce," and to that extent its relation to the commerce clause is unchanged from the statute upon which the second Circuit passed, in Ryan, supra.

The defendant's final contention is that the statute makes criminal a union employee's obtaining an ordinary commercial loan from a bank or similar institution if his employer union "would admit to membership" any of the bank's employees. Although 29 U.S.C. § 186(c) exempts transactions "(3) with respect to the sale or purchase of * * * [a] commodity at the prevailing market price in the regular course of business;" this court need not decide whether an arm's length commercial transaction entered into in the regular course of the employer's lending business was intended to be prohibited by the statute[3] and

whether that prohibition would be constitutional. The defendant does not urge that the loan, which is the subject of the instant indicment, involved such a transaction. Moreover, the indictment charges that the defendant "willfully and knowingly" committed the offense charged. Title 29 U.S.C. § 186(d) limits the entire section's application to persons who "willfully" violate its restrictions. Although in United States v. Ricciardi, supra, the 2d Circuit has ruled that a loan need not be "made *because* the recipient was an employee representative," *Ricciardi*, supra, 357 F.2d at 99 (italics in the original); see Id., 357 F.2d at 100, and that a defendant need not know that he is violating the law, Id. at 100, there is nothing in the holding of *Ricciardi* that would obviate the statutory requirement that the government prove sufficient knowledge to render the conduct wilful or intentional rather than merely negligent or inadvertent. Cf. United States v. Byrd, 352 F.2d 570, 571–574 (2d Cir. 1965); United States v. Irwin, supra. Thus it may well be that where a transaction was entered into in the regular course of the business of a lending institution, a jury might, depending on the facts, find that the defendant lacked sufficient knowledge of the employee relationships to make the

---

**3.** The bills reported on by the Senate and House committees all contained amendments to the prior law substantially the same, insofar as herein relevant, to the statute ultimately enacted. See S. 1555, 86th Cong., 1st Sess. § 111 (1959) (as reported) § 211 (1959) (as passed); H.R. 8342, 86th Cong., 1st Sess. § 505 (1959) (as reported); H.R. 8400, 86th Cong., 1st Sess. § 505 (1959). It is not clear whether Congress intended to proscribe an arm's length commercial transaction entered into in the regular course of the relevant employer's lending business. See S.Rep. No. 187, 86th Cong., 1st Sess. 13 (1959) ("Section 302 (c) [as amended] exempts * * * legitimate transactions."); Id. at 43 ("[T]he amendments * * * would remove any doubt that *all forms of bribery and extortion* * * * would be prohibited * * *. The intent of these amendments * * * is to forbid any payment or bribe by an employer

* * * and to forbid *the receipt of any such bribe* * * *.") U.S.Code Congressional and Administrative News, p. 2360 (italics added.) But see H.R.Rep. No. 741, 86th Cong., 1st Sess. 46 (1959) ("The purpose of these amendments * * * is to forbid any payment, loan, or bribe by an employer * * *. The demand or *acceptance of such payment, loan, or bribe* is also proscribed."); Id. at 10 ("The committee bill also contains provisions dealing with breaches of trust and other questionable transactions, which, although not seriously criminal, nevertheless are *incompatible* with a strong and honestly run labor movement. * * * [T]he law of fiduciaries has forbidden any person in a position of trust * * *. * * to * * * enter into transactions in which self-interest *may conflict* with complete loyalty to those whom he serves. * * * It should be equally applicable to union officers and employees.") (italics added.)

conduct wilful. Courts should not reach out to decide constitutional issues. See Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 345–348, 56 S.Ct. 466, 482–484, 80 L.Ed. 688 (1936) (Brandeis, J. concurring). Moreover,

> "one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

See Id. at 20–22, 80 S.Ct., at 522; United States v. Irwin, supra. This is not the kind of statute that is unconstitutional on its face, cf. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), and it is not unconstitutional as thus far applied to this defendant.

■ Defendant's motion to inspect the transcript of the testimony he gave before the grand jury, in order to refresh his recollection, must also be denied. Although disclosure of a subpoenaed prospective defendant's voluntary testimony is permitted for this purpose in the District of Columbia, United States v. Schoeneman, 203 F.Supp. 840 (D.D.C.1962), the rule in this district is that inspection will not be allowed, United States v. Kahaner, 203 F.Supp. 78, 85–87 (S.D.N.Y.1962) (Weinfeld, J.), unless the government has already broken the secrecy of the defendant's testimony. See United States v. Chartier, 65 Cr. 408, S.D.N.Y. Dec. 2, 1965; cf. United States v. Murray, 297 F.2d 812, 819–822 (2d Cir.), cert. denied, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962). In its supplemental affidavit the government has affirmed and defendant has not subsequently denied that the secrecy of this defendant's testimony has not been breached.

■ Defendant in his memorandum also urges that he be allowed "to inspect and copy the minutes of the Grand Jury" proceedings including, it would seem, the testimony of all other witnesses. This sweeping disclosure is sought in order to enable defendant to discover whether adequate legally competent evidence was introduced to justify his indictment. Pursuant to Fed.R. Crim.P. 6(e) the court finds that a sufficient showing for such disclosure has not been made. The motion is therefore denied, but without prejudice to the defendant's right to move at trial to obtain grand jury testimony upon grounds then appropriate.

■ Defendant has also moved for a bill of particulars. During oral argument, however, counsel for both the defendant and the government indicated that if the motion to dismiss the indictment were denied they would confer for the purpose of furnishing the defendant with an adequate bill of particulars. The motion for a bill of particulars, therefore, is deemed withdrawn without prejudice.

Motion to dismiss the indictment denied.

Motion to inspect grand jury minutes denied, without prejudice.

Motion for bill of particulars withdrawn, without prejudice.

So ordered.